**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| *In re* AMANDA ALEXX GIOVANNI, ) | |
| ) | Case No. 03-14006 |
| Debtor. ) | (Judge Mitchell) |

**CREDITOR'S MOTION FOR
FED. R. BANKR. P. 2004 EXAMINATION OF DEBTOR**

Grayson, Kubli & Hoffman, P.C. (the "Firm"),[1] creditor and party-in-interest, respectfully files this Motion for FED. R. BANKR. P. 2004 Examination of Debtor Amanda Alexx Giovanni ("Giovanni"). The Rule 2004 Examination is required for the reasons outlined below.

**FACTUAL BACKGROUND**

In December 2001, Giovanni asked the Firm to represent her in a lawsuit brought by her former employer, Andrulis Corp., in the Alexandria, Virginia Circuit Court (the "Alexandria Court"). After Giovanni made an initial payment of $10,000, Giovanni failed to make any more payments. The Firm moved to withdraw on June 11, 2002. Giovanni opposed the Firm's motion. The Alexandria Court denied the motion to withdraw. The Firm, without being paid, then represented Giovanni through trial.

During the litigation against Andrulis Corp., Giovanni testified under oath that she was married to Hassan el-Badoui.

The Alexandria Court found Giovanni liable for fraud, breach of fiduciary duty and conversion. The Court awarded Andrulis Corp. compensatory damages of $27,675, and punitive damages of $10,000.

---

[1] Formerly Grayson & Kubli, P.C.

Because Giovanni continued to refuse to pay the Firm, the Firm filed a lawsuit against Giovanni in the Fairfax County Circuit Court (the "Fairfax Court"), alleging, *inter alia*, breach of contract and fraud.[2] On November 8, 2002, Giovanni moved to compel arbitration. The Fairfax Court granted Giovanni's motion to compel arbitration, and on December 20, 2002, ordered the parties to arbitrate.

The arbitration was conducted before the American Arbitration Association. The parties filed pre-hearing briefs with the Arbitrator, and hundreds of exhibits. The Arbitrator conducted six days of live hearings.[3] The parties then filed post-hearing briefs with the Arbitrator.[4]

During the arbitration, Giovanni submitted invoices stating that Ahmad Bizri is an employee of Gio Assure, one of Giovanni's aliases.

---

[2] Circuit Court for the County of Fairfax, Virginia, Law No. 205661.

[3] At the hearing:

> The Firm presented five witnesses: four attorneys who worked on Ms. Giovanni's case and an expert witness, Bernard J. DiMuro, Esq., former President of the Virginia State Bar. Ms. Giovanni presented three witnesses: an expert witness, Warner Young, Esq., and two fact witnesses who had no knowledge of the relationship between the Firm and Ms. Giovanni. Notably, Ms. Giovanni failed to testify in her own defense. As is appropriate under Virginia law, the Arbitrator has inferred that had she testified, Ms. Giovanni's testimony would have been adverse to her interests.

Findings at 1 n.1 (citations omitted).

[4] Given the voluminous record in the Arbitration, and the preclusive status of the Arbitrator's findings under Federal law and Virginia law, the Firm has not submitted a copy of the record in support of this motion. The Firm will provide additional portions of the record if the Court requests.

On August 18, 2003, the American Arbitration Association issued the Award and Findings. The Arbitrator awarded damages to the Firm, as follows:

a. Count I (breach of contract): compensatory damages of $417,049.70, and in the aggregate;

b. Count II (breach of contract): compensatory damages of $417,049.70, and in the aggregate;

c. Count III (breach of contract): compensatory damages of $417,049.70, and in the aggregate;

d. Count IV (fraud): compensatory damages of $417,049.70, and in the aggregate;

e. Count V (fraud): compensatory damages of $417,049.70, and in the aggregate;

f. Count IV (fraud): punitive damages of $100,000;

g. Count V (fraud): punitive damages of $100,000, and in the aggregate;

h. Attorney's fees of $175,000.00;

i. Prejudgment interest through July 31, 2003 of $77,075.85;

j. Postjudgment interest at the rate of 1.5% per month until the Award is paid;

k. Arbitrator's fees of $375.00.

As Giovanni concedes in her Petition for Bankruptcy ("Petition"), the Firm therefore has a claim against Giovanni for the amount of the Arbitrator's award. *See* Giovanni Plan at Schedule F.

On August 27, 2003, Giovanni filed her Petition in this Court, and served a Suggestion of Bankruptcy on the Firm.

On September 12, 2003, Giovanni filed her Chapter 13 Plan (the "Plan").[5] In her Petition, Giovanni lists numerous aliases. However, Giovanni failed to disclose additional aliases known to the Firm. Giovanni's Plan specifically lists "Total Unsecured Debt including unsecured portions of secured debt: $857,198.54." Plan § A-2 ¶ B. Section B of Giovanni's Plan further provides that Giovanni "is an individual who owed, on the date of the filing of the petition commencing this case, noncontingent, liquidated and unsecured debts totaling $ 857, 198.54 and noncontingent, liquidated and secured debts totaling $ 17, 727.97." Id. § B-1. Giovanni further asserts that she is employed by a corporation, which evidently constitutes nothing more than her latest alias.

Giovanni's Petition and Plan list no codebtor, and state that Giovanni is not married.

Giovanni's Plan states that she leases her current residence from Ahmad Bizri, who Giovanni claimed was an employee of Gio Assure during arbitration. Plan at Schedule G.

## DISCUSSION

FED. R. BANKR. P. 2004, "**Examination**," states, in pertinent part, as follows:

(a) **Examination on motion**
On motion of any party in interest, the court may order the examination of any entity.

(b) **Scope of Examination**
The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may

---

[5] Giovanni's Plan includes as creditors, in addition to the Firm, two expert witnesses who testified on behalf of Giovanni against Andrulis, and the attorney who defended Giovanni in the litigation against the Firm.

> affect the administration of the debtor's estate, or to the debtor's right to a discharge.

FED. R. BANKR. P. 2004(a)-(b) (2003). The purpose of a Rule 2004 examination is not only to clarify the issue of whether the debtor is entitled to a discharge, but also to gain a clear picture of the debtor's actual financial condition. *In re McLaren*, 185 B.R. 655 (N.D. Ohio 1992). Hence, Rule 2004 is intended to give parties-in-interest, such as the Firm here, the opportunity to examine individuals with knowledge of all of the financial affairs and acts of the debtor, here Giovanni. *E.g.*, *In re GHR Energy Corp.*, 35 B.R. 534 (D. Mass. 1983) (articulating purpose of Rule 2004 examination).

"In the context of preparing chapter 13 schedules, honesty and full disclosure are the hallmarks of a good faith showing on the part of a debtor." *In re Daniel*, 260 B.R. 763, 767 (Bankr. E.D. Va. 2001). The information and facts outlined above, including Giovanni's failure to disclose in its Petition the names of additional aliases, raise serious questions concerning the veracity of the Petition, the relationship between Giovanni and her many aliases, and the extent to which disclosed and undisclosed aliases possess, or possessed, unreported assets or income. *See* 11 U.S.C. § 727(a)(4) (a debtor who makes a materially false oath is not entitled to a discharge); *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987) (debtor who knowingly failed to disclose assets of alter ego was properly denied a discharge); *see also* 11 U.S.C. § 727(a)(2) (a debtor who conceals property is not entitled to discharge); *Tully*; *see also, e.g.*, *In re Kersting*, 1996 Bankr. LEXIS 1636, *4-9 (D. Haw. 1996) (debtor who misused alter egos entities to conceal assets denied discharge).

For example, in *In re Fink*, 1986 U.S. Dist. LEXIS 17858 (S.D. Ga. 1986), a debtor failed to disclose his relationship with an unreported corporate entity. *Id*. at *101-02. The debtor's ownership and control of the undisclosed entity, *inter alia*, demonstrated that the entity was the alter ego of the debtor. *Id*. at *88-89. The Court denied discharge, because the debtor under-reported his assets and income within the meaning of 11 U.S.C. § 727(a)(2)(A), and "knowingly made false oaths in connection with this case within the meaning of Section 727(a)(4)(A)." *Id*. at *120.

Similarly here, Giovanni disclosed numerous aliases, and evidently failed to disclose yet additional aliases. Giovanni also may have hidden the existence of a codebtor. In addition, Giovanni's rental arrangement with Ahmad Bizri appears not to be an arms-length transaction, and may even be a device to conceal Giovanni's ownership of real property. The requested debtor's examination will develop and clarify the record with respect to this information, and permit the Firm, and ultimately the Court, to ascertain the actual financial condition of the debtor and resolve any resulting issues under Section 727(a).

Giovanni's counsel consented to examination of Giovanni on the record at the creditors meeting on September 30, 2003. Giovanni's counsel has since withdrawn his consent. A letter from Giovanni's counsel withdrawing consent to an examination is attached at Exhibit 1.

## **REQUEST FOR DOCUMENT PRODUCTION**

The Firm also requests that the Court order Giovanni to produce, on or before October 24, 2003, the following documents to be used in the Rule 2004 examination:

6

a. All documents that refer or relate to the financial condition of Giovanni, including without limitation any and all corporations owned in whole or in part by Giovanni or controlled by Giovanni and any and all Giovanni aliases, "t/a's," or "d/b/a's" (including any and all aliases undisclosed in the Petition (the "Giovanni Entities");

b. Any and all tax returns of Giovanni and the Giovanni Entities for the period of 1998 to the present;

c. All documents that refer or relate to any and all checking, savings, investment or other account held in part of on full by Giovanni or any and all Giovanni Entities during the period of 1998 to the present;

d. All documents that refer or relate to any and all assets, including without limitation cash, claims, accounts receivable, personalty or real property, owned or controlled during the past five years by Giovanni and any and all of the Giovanni Entities;

e. All documents that refer or related to any and all transactions during the past five years by Giovanni and any of all of the Giovanni Entities;

f. All documents that refer or relate to any interest in real property of Giovanni or any and all Giovanni Entities;

g. All documents that refer or relate to the formation and operation of InfoSec Strategies, Inc., including without limitation all documents that refer or relate to its work-in-process, contracts, executory contracts and other agreements.

    h.       All documents that refer or relate to any marriages entered into by Giovanni and any divorces.

    i.       All documents that refer to or relate to Hassan el-Badoui or Ahmad Bizri.

    j.       All documents that refer to or relate to Giovanni's rental of 6850 Alicia Court, Alexandria, Virginia 22310.

### CONCLUSION

For the foregoing reasons, the Firm respectfully asks the Court to grant this Motion, and to issue an Order that requires Giovanni: (1) by October 24, 2003, to produce for inspection and copying at 1420 Spring Hill Road, Suite 230, McLean, Virginia 22102, or other place agreed between counsel, the documents specified in the attached draft Order, and (2) to appear for examination pursuant to FED. R. BANKR. P. 2004 at the offices of Grayson, Kubli & Hoffman, P.C.,1420 Spring Hill Road, Suite 230, McLean, Virginia 22102, or any other mutually acceptable place, time and date.

### NOTICE PURSUANT TO LOCAL RULE

**We are serving this motion on you in accordance with the Court's rules. You have five business days from the date of service to object to the motion. If you file an objection, we must request a hearing date, transmit the notice of hearing to all parties in interest, and file the notice and proof of service with the Clerk. If you do not file an objection, we will submit a proposed order for examination to the Court and request that the Court sign that order.**

(Signatures Appear On Following Page)

Respectfully submitted,

PAPERMASTER & WELTMAN, P.C.

By: /s/Gary F. Weltmann
Gary F. Weltmann, Esquire
VA Bar No. 33861
30 West Gude Drive, Suite 450
Rockville, Maryland 20850
Phone (301) 279-0303
Local Counsel for Movant

GRAYSON, KUBLI & HOFFMAN, P.C.

By: /s/James A. McMillan
James A. McMillan, Esq.
VA Bar No. 35597
GRAYSON, KUBLI & HOFFMAN, P.C.
1420 Spring Hill Road, Suite 230
McLean, Virginia 22102
Phone (703) 749-0000
Counsel for Movant

## CERTIFICATE OF SERVICE

I hereby certify that I have this 15th day of October, 2003, mailed a true copy of the foregoing Creditor's Motion for FED. R. BANKR. P. 2004 Examination of Debtor to:

Amanda Alexx Giovanni
6850 Alicia Court
Alexandria, Virginia 22310

Richard S. Stolker, Esq.
110 North Washington Street
Suite 320
Rockville, Maryland 20850

Gerald M. O'Donnell
Chapter 13 Trustee
201 N. Union Street, Ste. 120
Alexandria, VA 22314

US Trustee
115 South Union Street
Suite 210
Alexandria, Virginia 22314

/s/James A. McMillan